# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

| | |
|---|---|
| WILLA JEAN WILLIAMS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 4:13-CV-0287-DGK-SSA |
| ) | |
| CAROLYN W. COLVIN,[1] ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## ORDER AFFIRMING COMMISSIONER'S DECISION

Plaintiff Willa Williams ("Plaintiff" or "Williams") seeks judicial review of the Commissioner of Social Security's ("the Commissioner's") denial of her application for disability insurance benefits under Title II of the Social Security Act (the "Act"), 42 U.S.C. §§ 401 *et. seq.* The Administrative Law Judge ("ALJ") found that although Plaintiff suffered from the severe impairments of seizures, adjustment disorder, and anxiety with a depressed mood, she still retained the residual functional capacity ("RFC") to perform medium work. Because Plaintiff qualified for positions as a lamination assembler, linen room attendant, and order filler, the ALJ found she was not disabled as defined in the Act.

After careful review, the Court holds the ALJ's decision is supported by substantial evidence on the record as a whole, and the Commissioner's decision is AFFIRMED.

## Background

The medical record is summarized in the parties' briefs and is repeated here only to the extent necessary.

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. Pursuant to Federal Rule of Civil Procedure 25(d), she is substituted for Michael J. Astrue as the defendant.

On October 30, 2009, Plaintiff filed an application for disability insurance benefits, alleging a disability onset date of September 24, 2008. The Commissioner denied her application at the initial claim level, and Plaintiff appealed the denial to an ALJ. After a hearing, the ALJ held that Williams was not disabled as defined in the Act.

Shortly thereafter, Plaintiff filed a claim with the Social Security Appeals Council (the "Appeals Council"). In her appeal, Plaintiff submitted three new opinions from her two treating sources, Drs. Mahmoud Wahba, M.D., and Ian Belson, D.O., which expounded upon their previous opinions presented to the ALJ. R. at 433, 437, 440.[2] In early 2013, the Appeals Council denied Plaintiff's request for review, leaving the ALJ's decision as the Commissioner's final decision. Plaintiff has exhausted all of her administrative remedies and judicial review is now appropriate under 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3).

## Standard of Review

A federal court's review of the Commissioner of Social Security's decision to deny disability benefits is limited to determining whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Buckner v. Astrue*, 646 F.3d 549, 556 (8th Cir. 2011). Substantial evidence is less than a preponderance, but enough evidence that a reasonable mind would find it sufficient to support the Commissioner's decision. *Id.* In making this assessment, the court considers evidence that detracts from the Commissioner's decision, as well as evidence that supports it. *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000). The court must "defer heavily" to the Commissioner's findings and conclusions. *Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010). The court may reverse the Commissioner's decision only if it falls outside of the available zone of choice, and a decision is not outside this zone simply because the

---

[2] Although this evidence was not presented to the ALJ, the Court considered it in analyzing Plaintiff's claims because all three letters address Plaintiff's mental impairments. *See Myers v. Colvin*, 721 F.3d 521, 526 (8th Cir. 2013) (considering new evidence presented to the appeals council but not the ALJ).

court might have decided the case differently were it the initial finder of fact. *Buckner*, 646 F.3d at 556.

## Analysis

In determining whether a claimant is disabled, that is, unable to engage in any substantial gainful activity by reason of a medically determinable impairment that has lasted or can be expected to last for a continuous period of not less than twelve months, the Commissioner follows a five-step sequential evaluation process.[3]

Plaintiff contends the ALJ erred at step three of the sequential process when he found that her mental impairments did not meet the listing requirements under 20 C.F.R. Part 404, Subpart P, Appendix 1. She also argues the ALJ erred at step four by: (1) failing to properly weigh the medical opinion evidence; and (2) improperly evaluating her credibility. Finally, she contends the ALJ erred at step five by improperly formulating a hypothetical to the vocational expert ("VE") and then relying on the VE's erroneous testimony in finding that she could perform other work in the national economy.

**A. The ALJ did not err at step three of the sequential process.**

Plaintiff contends the ALJ should have found her alleged mental impairments—bipolar disorder, post-traumatic syndrome ("PTSD"), and anxiety disorder—satisfy the requirements of

---

[3] The five-step process is as follows: First, the Commissioner determines if the applicant is currently engaged in substantial gainful activity. If so, he is not disabled; if not, the inquiry continues. At step two the Commissioner determines if the applicant has a "severe medically determinable physical or mental impairment" or a combination of impairments. If so, and they meet the durational requirement of having lasted or being expected to last for a continuous 12-month period, the inquiry continues; if not, the applicant is considered not disabled. At step three the Commissioner considers whether the impairment is one of specific listing of impairments in Appendix 1 of 20 C.F.R. § 404.1520. If so, the applicant is considered disabled; if not, the inquiry continues. At step four the Commissioner considers if the applicant's residual functional capacity ("RFC") allows the applicant to perform past relevant work. If so, the applicant is not disabled; if not, the inquiry continues. At step five the Commissioner considers whether, in light of the applicant's age, education and work experience, the applicant can perform any other kind of work. 20 C.F.R. § 404.1520(a)(4)(i)-(v); *King v. Astrue*, 564 F.3d 978, 979 n.2 (8th Cir. 2009). Through step four of the analysis the claimant bears the burden of showing that he is disabled. After the analysis reaches step five, the burden shifts to the Commissioner to show that there are other jobs in the economy that the claimant can perform. *King*, 564 F.3d at 979 n.2.

Section 12.04 or 12.06 under the Listing of Impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. The Court disagrees.

To demonstrate disability at step three of the sequential process, the claimant must show that her impairments meet or equal one of the listings in the regulations. *Johnson v. Barnhart*, 390 F.3d 1067, 1070 (8th Cir. 2004) (citing *Sullivan v. Zebley*, 493 U.S. 521, 530-31 (1990)). To satisfy this standard, the claimant must present medical findings demonstrating that her impairment meets all the listing criteria. *Id.* With respect to the listings at issue in this case, a claimant must satisfy one of the requirements in paragraph A of that listing *and* at least two of the requirements in paragraph B *or* one of the requirements in paragraph C of that listing. 20 C.F.R. Pt. 404, subpt. P, App. 1, § 12.00(A).[4] To satisfy the paragraph B listing requirements under either § 12.04 (Affective Disorders) or § 12.06 (Anxiety Related Disorders) the claimant must show that his or her impairments result in two of the following:

> (1) Marked restriction of activities of daily living; (2) Marked difficulties in maintaining social functioning; (3) Marked difficulties in maintaining concentration, persistence, or pace; or (4) Repeated episodes of decompensation, each of extended duration.

20 C.F.R. Pt. 404, subpt. P, App. 1, §§ 12.04(B), 12.06(B).

Here, Plaintiff's argument is premised on the assumption that the ALJ was required to give controlling weight to the opinions of her treating sources, Dr. Ian Belson, D.O. ("Dr. Belson"), Dr. Mahmoud Wahba, M.D. ("Dr. Wahba"), and Dr. Herman Lucke, Ph.D. ("Dr. Lucke"). Plaintiff contends the check-marked mental medical source statements ("MMSS") forms from these doctors show that she exhibits marked difficulties in maintaining social functioning and in maintaining concentration, persistence, or pace. R. at 325-26, 328-29, 411-

---

[4] Because the ALJ's finding that Plaintiff fails to meet the requirements of paragraphs B and C for listings 12.04 and 12.06 is supported by substantial evidence, it is unnecessary for the Court to analyze whether Plaintiff meets the paragraph A requirements. *See Randolph v. Barnhart*, 386 F.3d 835, 840 n.7 (8th Cir. 2004) (employing a similar type of analysis).

12. She concludes that if the ALJ assigned the proper weight to these opinions, he would have found Plaintiff met the listing requirements and was therefore disabled.

This contention is flawed in multiple respects. As a matter of law, the ALJ is not required to give controlling weight to any treating source opinion at step three of the sequential process. *See Randolph v. Barnhart*, 386 F.3d 835, 840 (8th Cir. 2004) ("[D]etermining whether an individual's impairment reaches listing level is not an issue in which the opinion of a treating source is given controlling level."). Moreover, as discussed in section B, the opinions' checklist format and the inconsistencies between them and the other record evidence undermines their probative value. Consequently, the ALJ properly considered the entire record evidence in determining whether Plaintiff met the listing requirements.

When considering the record evidence on a whole, the ALJ ultimately found that Plaintiff had no restrictions of daily living, moderate difficulties in maintaining social functioning, moderate difficulties in maintaining concentration, persistence, or pace, and no episodes of decompensation. R. at 15. Substantial evidence supports this finding. As for activities of daily living, Plaintiff shopped for groceries, cleaned her house, socialized with friends and family, talked on the phone, and, until a few months before the hearing, she played cards with friends and swam on a regular basis. R. 39, 146-50, 156-59, 391, 415. With respect to social functioning, although there is some evidence that Plaintiff experienced problems interacting with co-workers and employers, there is also ample evidence that she was cooperative, pleasant, and calm. R. at 247-48, 250-56, 269, 286-87, 298, 349, 271-427. Additionally, in Dr. Wahba's most recent opinion, he states that the combination of retirement and medication has somewhat controlled her mood, anxiety, and depression problems. R. at 434. In regards to concentration, persistence, and pace, Dr. Wahba consistently documented that Plaintiff exhibited fair attention

span, fair concentration, fair memory, and normal thought processes. *See, e.g.,* R. at 245-49 (noting these observations in treatment notes). Finally, there is no record evidence showing Plaintiff experienced any episodes of decompensation. Because the record evidence on a whole does not suggest that Plaintiff exhibited marked limitations in at least two of the aforementioned categories,[5] the ALJ did not err in finding that Plaintiff's disorders failed to satisfy Listing Sections 12.04 and 12.06.

      **B.**      **The ALJ properly weighed the opinion evidence.**

Next, Plaintiff contends the ALJ improperly weighed the opinion evidence. In particular, she argues the ALJ should have given the opinions of Dr. Wahba, Dr. Belson, and Dr. Lucke controlling weight. In this same vein, she asserts that the ALJ gave undue weight to the opinion of a one-time consulting psychologist, Dr. Alan R. Israel, Ph.D. ("Dr. Israel"), a reviewing psychologist, Dr. J. Edd Bucklew, Ph.D. ("Dr. Bucklew"), and the non-medical consultant, Rick Smith ("Mr. Smith"). The Court finds no error here.

An ALJ should usually assign controlling weight to a treating physician's opinion if that opinion is well-supported by, and consistent with, other evidence in the record. *Myers v. Colvin*, 721 F.3d 521, 524 (8th Cir. 2013) (citing 20 C.F.R § 404.1527(c)(2)). A treating physician's opinion, however, "is entitled to controlling weight only to the extent it is consistent with medically acceptable clinical or laboratory diagnostic data." *Casey v. Astrue*, 503 F.3d 687, 692 (8th Cir. 2007); *see also* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). A treating physician's opinion is not afforded controlling weight when the opinion is "internally inconsistent," *Myers*, 721 F.3d at 525, or if a conflict exists between the treating physician's opinion and other substantial evidence in the record. *Brown v. Astrue*, 611 F.3d 941, 951 (8th Cir. 2010). Where, as here, the record contains differing medical opinions, it is the ALJ's responsibility to resolve

---

[5] Plaintiff does not challenge the ALJ's finding that she failed to satisfy the paragraph C requirements.

6

the conflicts among them. *Finch v. Astrue*, 547 F.3d 933, 936 (8th Cir. 2008). Once the ALJ has articulated the weight afforded to a physician's opinion, the court only inquires to whether substantial evidence supports the ALJ's analysis, not whether the evidence could have supported a different conclusion in the first instance. *See Goff v. Barnhart*, 421 F.3d 785, 790-91 (8th Cir. 2005).

The ALJ gave several well-supported reasons for rejecting the opinion of Plaintiff's treating neurologist, Dr. Belson. Dr. Belson completed a MMSS and three letters which all essentially opined that Plaintiff was disabled due to her recurrent seizures, cognitive dysfunction, and psychiatric disabilities. R. at 331, 334, 336, 437, 440. With regard to the mental limitations, the ALJ discounted Dr. Belson's opinion because he was a neurologist rather than a psychologist or psychiatrist. R. at 17. This is a valid reason for discounting a treating source's opinion. *See Brown*, 611 F.3d at 953. Dr. Belson himself even explicitly acknowledges his lack of expertise in one of his most recent letters: "I am not a psychiatrist and cannot make any informed judgments concerning ["Plaintiff's"] possible PTSD, depression or anxiety." R. at 440. Thus, it is apparent that the ALJ was warranted in discounting Dr. Belson's opinion regarding her mental impairments.

Dr. Belson's opinion concerning the functional impact of Plaintiff's seizures is also contradicted by his own treatment notes and opinion letters. While Dr. Belson claims that Plaintiff's seizures result in disabling limitations, he repeatedly observed in his notes that her seizures were well-controlled with medicine, R. at 259, 263, 265, 267, 269, 270-71, 365, 368, 383, 385, 392, and his opinion letters reveal that she only experiences seizures once every two or three months. R. at 437, 440. Besides contradicting his opinion, this evidence also demonstrates that Plaintiff's seizure disorder imposes only minimal functional limitations, because it is well-

7

settled that a disorder is not disabling if medication effectively controls it. *Brown*, 611 F.3d at 955.

Finally, other record evidence contradicts Dr. Belson's opinion regarding Plaintiff's cognitive dysfunction. Although Dr. Belson opined that Plaintiff exhibited problems with attention and concentration, R. at 334, Dr. Wahba routinely remarked that Plaintiff's attention span, concentration, memory, and thought processes were fair. R. at 245-56, 283-87, 343-51. The foregoing supports the ALJ's decision to give Dr. Belson's opinion little weight.

Similarly, the ALJ did not err in giving little weight to the opinion of Plaintiff's treating psychiatrist, Dr. Wahba. R. at 17. The ALJ provided a multitude of reasons for rejecting his opinion, including the inconsistency between his treatment notes and his MMSS form, Plaintiff's lack of emergency room visits or hospitalization, her continued use of medication at the same level, the cursory nature of his opinion, and the lack of objective support for the opinion. *Id.* While Plaintiff initially presented the ALJ with a check-marked MMSS form from Dr. Wahba, R. at 328-29, Plaintiff later supplemented the record on appeal with a narrative letter from Dr. Wahba. R. at 433-34. Even considering this newly presented evidence, the ALJ's decision to discount Dr. Wahba's opinion is still supported by substantial evidence.

As an initial matter, the Court recognizes that the record evidence fails to support the ALJ's conclusion that Dr. Wahba continually prescribed medication at the same level. In fact, the record evidence indicates that Dr. Wahba repeatedly adjusted the type and dosage of her medication in an attempt to moderate her symptoms. R. at 253-55, 283-85, 341-42, 345, 351, 356. That said, the remainder of the ALJ's findings regarding Dr. Wahba's opinion is supported by the record evidence. First, there are arguable inconsistencies between Dr. Wahba's MMSS form—in which he articulated Plaintiff's functional limitations—and his treatment notes. For

instance, on the MMSS form Dr. Wahba indicated that Plaintiff showed marked limitations in her ability to perform at a consistent pace, R. at 329, yet, during almost every visit, Dr. Wahba documented Plaintiff's ability to concentrate and focus as fair and noted her thought processes were normal. R. at 245-56, 283-87, 343-51. Additionally, Dr. Wahba opined in his letter that Plaintiff displayed "a great deal of anxiety, stress, and depression." R. at 434. His treatment notes, however, suggest that during many appointments Plaintiff presented herself as euthymic[6] and not anxious or depressed. R. at 245-246, 250-53, 283, 344, 349, 407-08. These inconsistencies support the ALJ's decision to discount Dr. Wahba's opinion. *Brown*, 611 F.3d at 951.

The ALJ also properly noted that despite Dr. Wahba's claims of severe psychiatric disorders, Plaintiff was never hospitalized nor did she ever receive emergency room treatment. R. 17. Arguably, if Plaintiff's mental disorders were as severe as Dr. Wahba suggested in his most recent opinion, R. 434, there would be records reflecting a commensurate degree of treatment, such as psychiatric hospitalization. *See Peterson v. Astrue*, No. 07-4068-ADM/RLE, 2008 WL 4323717, at *1 (D. Minn. Sept. 18, 2008) (discounting treating physician's opinion for this same reason). On the contrary, it appears that such treatment was unnecessary for Plaintiff's disorder because Dr. Wahba opined that medication eventually started to control her mood, anxiety, and depression. *See* R. at 434 ("It took a great deal of effort to get stable and on an effective medication regime to *control* her mood, sleep, anxiety, depression, trauma and fear, all triggered by her uncomfortable job situation at the VA."). And, as articulated previously, an ability to control a disorder through medication vitiates against a finding of disability. *See*

---

[6] Euthymic is a medical term of art used to describe a patient who exhibits a moderate mood—*i.e.* neither depressed nor manic. PDR Medical Dictionary 606 (1st ed. 1995).

*Brown*, 611 F.3d at 955. Thus, it appears that Plaintiff's lack of serious treatment and the effectiveness of her medication also detracts from Dr. Wahba's opinion.

The record evidence also supports the ALJ's other reasons for discounting his opinion, namely, its cursory nature, the lack of objective evidence, and over-reliance on subjective complaints. Dr. Wahba's MMSS form consists of nothing more than checked-marked boxes with no further explanations or citations to his treatment notes, R. at 328-29, and cursory forms such these are of limited probative value. *McCoy v. Astrue*, 648 F.3d 605, 615 (8th Cir. 2011). Moreover, Dr. Wahba's treatment notes suffer from the same infirmity as they consist of check-marked boxes without any legible explanation of his findings, thus his notes do not provide meaningful support for his conclusory MMSS. R. at 245-56, 283-87, 343-51. Also, it is unclear from his treatment notes and his opinion whether he relied on any objective testing criteria in assessing Plaintiff's functional limitations. R. at 245-56, 283-87, 328-29, 343-51, 433-34; *see Davidson v. Astrue*, 578 F.3d 838, 844 (8th Cir. 2009) (affirming the ALJ's discounting of a treating sources opinion in part because there was no evidence of medical tests or diagnostic data supporting the conclusion). Rather, it appears that he primarily relied upon Plaintiff's subjective complaints. *See* R. at 433 (summarizing Plaintiff's reports of symptoms as a basis for his diagnosis); *Renstrom v. Astrue*, 680 F.3d 1057, 1064 (8th Cir. 2012) (affirming ALJ's decision to discount treating source's opinion because it was based upon subjective complaints). Furthermore, the narrative analysis in Dr. Wahba's opinion letter does not alter these conclusions, because it merely summarizes his previous notes rather than providing an explanation of how his findings support the limitations articulated in the MMSS form. R. at 433-34. Consequently, the ALJ did not err in giving little weight to Dr. Wahba's opinion.

Likewise, the ALJ did not err in discounting the opinion of Plaintiff's treating psychologist, Dr. Lucke. Dr. Lucke completed two MMSS forms which indicated that Plaintiff exhibited marked or extreme limitations in every functional category, essentially suggesting that Plaintiff is disabled. R. at 325-26, 411-12. Ultimately, the ALJ rejected Dr. Lucke's opinions for the same reasons he discounted Dr. Wahba's. Substantial evidence supports this decision.

First, while Dr. Lucke's opinions are not necessarily inconsistent with his treatment notes, they are inconsistent with Dr. Wahba's treatment notes. Dr. Lucke opined that Plaintiff was markedly or extremely limited in his ability to make judgments on simple decisions, to understand simple instructions, and to maintain a persistent pace during work. R. at 325-26, 411-12. But, Dr. Wahba continually noted that Plaintiff exhibited average intelligence, goal directed thought processes, fair attention span, fair concentration, and fair insight and judgment. R. at 245-56, 283-87, 340-51, 406-08. Also, despite Dr. Lucke's opinion that Plaintiff was extremely limited in almost every category of functioning due to her bipolar disorder and depression, the records do not reflect any aggressive treatment such as psychiatric hospitalization or emergency room visits which one would expect to see if Plaintiff were as impaired as Dr. Lucke suggests. Moreover, both of Dr. Lucke's MMSS forms consist of check-marked boxes with only a passing reference to her diagnosis for bipolar disorder. R. at 325-26, 411-12. These forms are devoid of any reference to specific diagnostic data that supports these limitations. *Id*. And, although Dr. Lucke assessed Plaintiff with a Global Assessment of Functioning ("GAF") score in the 40-45 range, which typically suggests a severe mental impairment, *see Halverson v. Astrue*, 600 F.3d 922, 930-31 (8th Cir. 2010), his notes lack any other objective data which supports his diagnosis of disabling limitations. R. at 352-63, 409-15. The probative value of the GAF score is further undermined to the extent that other record evidence discussed above

11

indicates that Plaintiff only has moderate limitations in her ability to function. *See Wright v. Astrue*, 489 Fed. Appx. 147, 149 (8th Cir. 2012) (finding no error in the ALJ's failure to discuss GAF scores when other evidence in the record undermined the value of the scores). Thus, the Court cannot say that the ALJ's decision to discount Dr. Lucke's opinion was outside the zone of choice. *Buckner*, 646 F.3d at 556.

Plaintiff also contends the ALJ erred in giving great weight to the opinion of a consulting psychologist, Dr. Israel and giving some weight to the opinion of a reviewing psychologist, Dr. Bucklew. The Court disagrees.

An opinion from a consulting physician may take precedence over the opinion of a treating source if the consulting physician opinion is supported by "better or more thorough medical evidence." *See Wildman v. Astrue*, 596 F.3d 959, 964 (8th Cir. 2010) (quoting *Goff*, 421 F.3d at 790). Here, after reviewing Plaintiff's records, examining her, and conducting an objective mental examination, R. at 297-30, Dr. Israel found that Plaintiff only demonstrated moderate or insignificant limitations in most functional categories. R. at 301-02. Dr. Israel's opinion not only included a check-marked form, but also a narrative outlining Plaintiff's medical history, summarizing her medical records, and explaining the functional limitations observed during his examination. R. at 297-300. Additionally, as the ALJ noted, Dr. Israel's opinion more closely conformed to the medical evidence in the record, including Dr. Wahba's notes, which suggested only intermittent depression and only moderate cognitive limitations. R. at 245-56, 283-87, 340-51, 406-08. Similarly, the opinion of Dr. Bucklew, which also indicates Plaintiff only possesses insignificant to moderate limitations, R. at 304-14, is also consistent with this same record evidence. R. at 245-56, 283-87, 340-51, 406-08. Finally, Dr. Israel specifically considered Plaintiff's activities of daily living in formulating his recommendation. R. at 298.

Because the ALJ provided several well-supported reasons for giving Dr. Israel's opinion great weight and Dr. Bucklew's opinion some weight, the Court cannot say that this decision was outside the zone of choice. *Buckner*, 646 F.3d at 556.

Finally, Plaintiff contends the ALJ erred in giving any weight to the opinion of a single-decision maker, Mr. Smith. Although the ALJ had indicated at Plaintiff's hearing that he would not consider Mr. Smith's Physical Medical Source Statement ("PMSS") because Mr. Smith is not a medical consultant, R. at 29, the ALJ's opinion appears to give Mr. Smith's opinion "some weight." R. at 17.

While the ALJ may have erred in giving weight to Mr. Smith's PMSS opinion, *see Andreatta v. Astrue*, No. 11-3158-CV-S-NKL-SSA, 2012 WL 1854749, at *10 (W.D. Mo. May 21, 2012), any error was harmless. Mr. Smith opined that Plaintiff could never climb ladders, ropes, or scaffolds, and she should avoid exposure to hazards. R. at 317-18. Mr. Smith attributed these physical limitations to Plaintiff's seizure disorder. R. at 315. However, besides Dr. Belson's cursory statement that Plaintiff was disabled due to her seizure disorder, there is no record evidence that this condition imposes any functional limitations on Plaintiff's ability to work. In fact, as Dr. Belson often noted, medication controlled this disorder. R. at 259, 263, 265, 267, 269, 270-71, 365, 368, 383, 385, 392. Since Mr. Smith's opinion provided a physical assessment more restrictive than what the record evidence supports, the ALJ's reliance on his opinion was harmless.

### C. The ALJ did not err in assessing Plaintiff's credibility.

Plaintiff contends the ALJ erred in evaluating her credibility. In particular, Plaintiff argues the ALJ improperly discounted her hearing testimony regarding the functional limitations arising from her seizure disorder and her mental impairments. This argument lacks merit.

Credibility questions concerning a plaintiff's subjective testimony are "primarily for the ALJ to decide, not the courts." *Baldwin v. Barnhart*, 349 F.3d 549, 558 (8th Cir. 2003). In analyzing a claimant's credibility, the ALJ considers the entire record, including medical records; statements from the plaintiff and third parties; the claimant's daily activities; the duration, frequency and intensity of pain; the dosage, effectiveness, and side effects of medication; precipitating and aggravating factors; and functional restrictions. 20 C.F.R. § 404.1529; *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). When the ALJ articulates the inconsistencies that undermine the claimant's subjective complaints and those inconsistencies are supported by the record, the ALJ's credibility determination should be affirmed. *Eichelberger v. Barnhart*, 390 F.3d 584, 590 (8th Cir. 2004).

Here, the ALJ provided numerous well-supported reasons for discrediting Plaintiff's credibility. First, the ALJ noted that despite Plaintiff's allegations that her disabling limitations began in September 2008, she still worked until October 2009. R. at 16. A claimant's continued employment while simultaneously complaining of disabling limitations detracts from her credibility. *See Van Vickle v. Astrue*, 539 F.3d 825, 830 (8th Cir. 2008) ("Thus, despite suffering from what she calls 'extreme fatigue,' Van Vickle continued working for over four years."). Next, Plaintiff's allegations of disabling seizures, the ALJ noted that Plaintiff's medical records reveal that she only has seizures every couple of months because her medication effectively controls the disorder. R. at 16, 259, 263, 265, 267, 269, 270-71, 365, 368, 383, 385, 392. Also, contrary to her assertions that her employer forced her to retire due to medical reasons, R. at 32, other record evidence reveals that she actively pursued medical retirement and the employer reluctantly agreed. R. 262, 266-67. Cumulatively, these inconsistencies significantly detract

14

from her credibility. *See Travis v. Astrue*, 477 F.3d 1037, 1042 (8th Cir. 2007) (noting that inherent inconsistencies in a claimant's reports detract from his or her credibility)

With respect to her allegations of disabling anger and irritability, the ALJ noted that Plaintiff's allegations were inconsistent with the record evidence. R. at 16. Numerous treatment notes support this finding, including: Dr. Belson's observation that Plaintiff was feeling fine and coping well with retirement, R. at 383; other treating physicians' observations that she was cooperative, R. at 247-48, 250-56, 286-87, 298, 349, pleasant, R. at 271-427, and even quite calm on occasion, R. at 269; and Dr. Wahba's notes which do not reflect aggressive behavior or any incidents of rage. R. at 247-56, 285, 298. Thus, it is clear that Plaintiff's allegations of disabling rage are not fully credible.

Aside from these inconsistencies, the ALJ also properly considered Plaintiff's manipulative demeanor during the hearing as one factor in the credibility analysis. R. at 16; *see Lamp v. Astrue*, 531 F.3d 629, 632 (8th Cir. 2008) ("Here, to reach his conclusion, the ALJ combined his review of the record as a whole with his personal observations. Our precedent…does not forbid this."). Likewise, the ALJ did not err in considering the inconsistency between Plaintiff's daily activities—swimming and playing cards with others, cooking simple meals, cleaning, doing laundry, and ironing—and her complaints of disabling limitations due to her seizures and mental impairments. R. at 32, 146-50, 156-59, 162, 243, 297, 395. As the ALJ articulated a number of well-supported reasons for discounting Plaintiff's hearing testimony, the ALJ did not err in evaluating her credibility.

### D. The ALJ properly relied on the vocational expert testimony in finding Plaintiff was not disabled.

Finally, Plaintiff asserts the ALJ's ultimate disability decision at step five of the process is flawed because he provided a faulty hypothetical to the VE and then improperly relied on the

VE's erroneous testimony. Plaintiff suggests the ALJ should have presented a hypothetical completely based upon the limitations articulated in Dr. Wahba's MMSS form. If the ALJ had done so, Plaintiff reasons, the VE would have testified that she could not perform any work. This argument lacks merit.

Plaintiff's entire assignment of error is predicated upon the theory that the ALJ should have given Dr. Wahba's opinion controlling weight. However, as discussed above, the ALJ did not err in basing his RFC upon other record evidence, including the opinion of Dr. Israel. Since the ALJ properly formulated a hypothetical which included all of Plaintiff's impairments that the ALJ found credible and supported by the record, he properly relied upon the VE's testimony in concluding that Plaintiff was not disabled as defined in the Act. *See Martise v. Astrue*, 641 F.3d 909, 927 (8th Cir. 2011).

## Conclusion

Because substantial evidence on the record as a whole supports the ALJ's decision, the Commissioner's decision is AFFIRMED.

**IT IS SO ORDERED.**

Date: February 7, 2014         /s/ Greg Kays
                GREG KAYS, CHIEF JUDGE
                UNITED STATES DISTRICT COURT